<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

Filed / Docketed
July 30, 2007

| | |
|---|---|
| IN RE: ) | Case No. 06-11721-R |
| ) | Chapter 7 |
| **REAVIS, ROSS FRED, JR.,** ) | |
| ) | |
| Debtor. ) | |

<u>**ORDER DENYING MOTION TO DISMISS**</u>

This contested matter came before the Court for hearing on April 19, 2007, on the Motion to Dismiss Under § 707(b) filed by the Quapaw Tribe of Oklahoma (the "Quapaw Tribe") on February 8, 2007 (Doc. 17), as amended on March 2, 2007 (Doc. 28), and supplemented on April 13, 2007 (Doc. 29)(collectively, the "Motion to Dismiss"), and the Objection to Motion to Dismiss Under § 707(b) filed by Debtor Ross Fred Reavis, Jr. ("Reavis") on February 27, 2007 (the "Objection")(Doc. 24). The Quapaw Tribe appeared through counsel, Timothy Trump. Reavis appeared in person and through his counsel, Scott P. Kirtley. The parties presented testimony through three witnesses: John Berrey, the Chairman of the Business Committee of the Quapaw Tribe ("Berrey"), Reavis, and Stewart E. Field. The Court, having reviewed the Motion to Dismiss, the Objection, and the exhibits presented at the hearing, having heard testimony and arguments of counsel, and being fully advised, makes the following findings of fact and conclusions of law.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(J), (O) and 11 U.S.C. § 707(b).

**Findings of Fact**

Reavis, a certified public accountant, maintained a small public accounting practice in Tulsa, Oklahoma, for eleven years prior to filing this bankruptcy case. On June 30, 2006, about five months before the petition date, Reavis terminated his private practice and took a position with the Internal Revenue Service. Reavis currently earns an annual salary of $72,000 as a Revenue Agent for the IRS. Reavis and his wife do not have any dependents. Reavis's wife did not file bankruptcy.

The Quapaw Tribe operates a casino in Ottawa, Oklahoma (the "Casino"). In 2001, the Quapaw Tribe retained Reavis to audit financial statements for the Casino. Reavis conducted four audits of the financial operations of the Casino for the fiscal years of 2001, 2002, 2003 and 2004. During this time, the Casino was managed by a third party contractor, Marcus Dunn ("Dunn").

In 2005, the Quapaw Tribe terminated Dunn's employment and retained a forensic accounting expert to investigate and perform a "forensic" audit of the financial operation of the Casino under Dunn's management. As a result of the investigation, the Quapaw Tribe allegedly discovered financial mismanagement, fraud and other abuses committed by Dunn. On September 6, 2005, the Quapaw Tribe and the Quapaw Gaming Corporation ("Gaming") filed an action against Dunn (and Dunn's related business entities) in the District Court for the Northern District of Oklahoma asserting claims of fraud, negligence, conversion, unjust enrichment, and other breaches of legal and fiduciary obligations with respect to Dunn's management of the Casino, and sought damages in excess of $75,000 (the "Dunn lawsuit").

See Debtor Exh. 6. On June 9, 2006, the Dunn lawsuit was settled. Pursuant to the Settlement Agreement dated June 9, 2006, Dunn was required to pay $200,000 to the Quapaw Tribe (along with other various sums) and to convey to the Quapaw Tribe all the right, title and interest in and to four tracts of real property. See Debtor Exh. 6B at Pages 4-6 of 21. On September 7, 2006, the Quapaw Tribe and Gaming filed a motion to enforce the Settlement Agreement in the Dunn lawsuit. See Debtor Exh. 6B.

On September 12, 2006, the Quapaw Tribe and Gaming filed a professional negligence action against Reavis in state court seeking damages in "excess of $10,000" (the "Reavis lawsuit"). See Debtor Exh. 4. In the Reavis lawsuit, the Quapaw Tribe and Gaming alleged, in part, that Reavis–

> failed to disclose and report: the unauthorized withdrawal by the management of the Casino of large sums of money; improper and undocumented disbursements made by Casino management; the payment of substantial sums of money by Casino management in related-party or non-arm's length transactions for less than actual value rendered; improper claims made by management for depreciation of assets; erroneous payments of the Tribe's revenue shares for the Casino; lack of compliance by Casino management with applicable laws, including Tribal and federal laws and regulations relating to commissions and internal financial controls; lack of adequate documentation by management for financial transactions; improper and/or fraudulent transactions relating to acquisitions of real property by Casino management; and fraudulent or otherwise improper financial transactions engaged in by, or with the acquiescence of, Casino management.

Debtor Exh. 4 at 4-5. The Quapaw Tribe and Gaming asserted that Reavis's audit reports were "inaccurate and misleading," were not prepared "in accordance with applicable professional standards" and should have revealed and reported Dunn's financial misconduct.

Id. at 4.  As a result of its reliance on Reavis's reports, the Quapaw Tribe and Gaming further asserted that they sustained "substantial financial and other damage and harm to the Tribe[.]" Id. at 5.

In September 2006, the Quapaw Tribe and Reavis (along with counsel for both parties) met to discuss Reavis's professional liability insurance, which was a prerequisite to any settlement negotiations.  During the meeting, Reavis made an offer to settle the Reavis lawsuit with the Quapaw Tribe for an undisclosed amount.  Reavis testified that the Quapaw Tribe rejected his settlement offer and advised him that the Quapaw Tribe had already incurred costs of $225,000 in legal and accounting fees.[1]  The Court finds that Reavis is a credible witness.  Mr. Berrey also testified that during the meeting, the Quapaw Tribe's attorney made a statement that the Quapaw Tribe spent more than $200,000 in pursuit of Dunn.

On October 12, 2006, Reavis met with Stewart Field ("Field"), an attorney and certified public accountant, to discuss the Reavis lawsuit.  Upon review of the allegations set forth in the Reavis lawsuit, Field advised Reavis that the Quapaw Tribe would likely seek recovery from Reavis of the costs it incurred in pursuit of Dunn.[2]  Field advised Reavis that

---

[1] Reavis testified that during the September 2006 meeting with the Quapaw Tribe, "an offer was made to [Mr. Berrey] to settle with the Quapaw Tribe . . . and he chuckled and said that he spent more than $225,000 in legal and accounting fees."

[2] Field testified that the Quapaw Tribe contended in the Reavis lawsuit that if Reavis had reported or "flagged" Dunn's financial misconduct in his first auditing report in 2001, the subsequent misconduct would not have occurred.  In other words, the Quapaw Tribe alleged that but for Reavis's alleged negligent audits, the Quapaw Tribe would have discovered Dunn's misconduct at an earlier time.

in order to effectively defend the lawsuit, Reavis would need to retain an accounting firm to audit the work that Reavis performed for the Quapaw Tribe and that the cost of defending the lawsuit could exceed $100,000. Field testified that after he realized the extent of the damages that the Quapaw Tribe was seeking from Reavis, he referred Reavis to a bankruptcy attorney. The Court finds that Field is a credible witness.

On November 27, 2006, Reavis filed his chapter 7 bankruptcy petition. In his petition, Reavis affirmatively checked the box on the petition form stating that the nature of his debts were "primarily business debts." See Debtor's Exh. 1 at 1. On Schedule F, Reavis identified the Quapaw Tribe and Gaming as unsecured creditors in the "contingent," "unliquidated" and "disputed" amount of $10,000, and he disclosed the existence of the Reavis lawsuit in his Statement of Financial Affairs. Id. at 19 and 27. Reavis did not file Official Form 22A, the " Statement of Current Monthly Income and Means Test calculation."

On December 22, 2006, during the Section 341 meeting of the creditors, Reavis testified that his debts were primarily business debts and admitted that the scheduled amount of $10,000 owed to the Quapaw Tribe was incorrect. Reavis explained that the debt was at least $225,000 based upon his understanding and belief that the Quapaw Tribe had incurred costs of $225,000 and that the Quapaw Tribe would seek reimbursement of the costs it incurred in the Dunn lawsuit from Reavis.[3] Reavis further explained during the Section 341

---

[3] Reavis's bankruptcy counsel inserted the $10,000 figure in Schedule F, which was amended consistent with Reavis's testimony during the Section 341 meeting. See Objection at 2.

5

meeting that "because the Quapaws' claim was a business debt[,] this tipped the scale and made a majority of his debts business related." Amended Motion to Dismiss at 2.

On January 4, 2007, Reavis amended Schedule F to correct the amount of the debt owed to the Quapaw Tribe and Gaming from $10,000 to $225,000. See Debtor's Exh. 2.

Reavis's business and consumer debts as of the petition date are summarized as follows:

| Consumer Debt | Business Debt |
|---|---|
| $109,000.00 *(mortgage)* | $ 22,000.00 *(second mortgage)* |
| 27,781.00 *(vehicle)* | 500.00 *(IRS)* |
| 3,988.93 *(credit cards)* | 250.00 *(OTC)* |
| 700.00 *(GE Money Bank)* | 8,448.72 *(credit card - business)* |
| 6,621.61 *(credit card)* | 6,170.13 *(credit card - business)* |
| $148,091.54 | 5,884.23 *(credit cards - business)* |
| | 225,000.00 *(Quapaw Tribe lawsuit)* |
| | $268,253.08 |

See Debtor's Exhibits 1, 2, and 5. The parties do not dispute the nature of Reavis's debts as Reavis characterized them as consumer or nonconsumer debts in his bankruptcy schedules. However, the parties dispute the amount of the debt that Reavis owes to the Quapaw Tribe, which amount will determine whether Reavis's debts are "primarily" consumer debts within the context of Section 707(b). The Quapaw Tribe asserts that the debt owed to it is $50,000 while Reavis asserts that the debt is $225,000.

On January 4, 2007, the Quapaw Tribe and Gaming filed a proof of claim asserting an unsecured nonpriority claim in the amount of $50,000 based upon the professional negligence claim in the Reavis lawsuit (the "Proof of Claim"). On April 17, 2007, Reavis filed an objection to the Proof of Claim stating that he denied the allegations set forth in the

Reavis lawsuit and that "no determinations have been made in the State Court Case." Objection to Proof of Claim (Doc. 34) at 1. On April 18, 2007, the Trustee filed the Trustee's Notice of No Asset Report (Doc. 36).

In the Motion to Dismiss, the Quapaw Tribe asserts that its Proof of Claim in the amount of $50,000 "trumps the Amended Schedules" and that such claim "stands as prima facia evidence as to the validity and the amount of such claim." Supplement to Motion to Dismiss at 3-4. The Quapaw Tribe further states in the Motion to Dismiss that "[i]f the Quapaw Tribe chooses to forego any possible claims over and above $50,000, there is no legal impediment that prevents it from doing so" and that its "right to waive enforcement of a portion of its claim does not require a stipulation, consent or agreement from the Debtor." Id. at 4.

Berrey testified that the $50,000 figure set forth in the Proof of Claim was "an arbitrary figure that [he] pulled out of thin air." Berrey also testified that he decided to file the Motion to Dismiss in order to "preserve" the claim in the amount of $50,000 and that "it was a strategy and use of the rules to preserve [the] claim of $50,000." Berrey testified that the Quapaw Tribe "always" intended to limit its claim to $50,000. Mr. Berrey testified that he did not know if the Quapaw Tribe informed Reavis that it intended to limit its claim against Reavis in the amount of $50,000. The Court finds that Berrey was not forthcoming in his testimony regarding when and why the Quapaw Tribe "decided" to limit its claim to $50,000. Other than Berrey's uncorroborated testimony, the Quapaw Tribe failed to present

any evidence that the amount of the Quapaw Tribe's claim was $50,000 at the time Reavis filed his bankruptcy petition.

**Contentions of the Parties**

The Quapaw Tribe contends that Reavis's debts are "primarily consumer debts" and that the case should be dismissed "as an abuse under 11 U.S.C. § 707(b)(2)." Additionally, the Quapaw Tribe asserts that the case was "automatically dismissed" pursuant to 11 U.S.C. § 521(i) because Reavis failed to file Official Form 22A, the Statement of Monthly Net Income and Means Test Calculation, within 45 days after the petition date in accordance with 11 U.S.C. § 521(a)(1)(B). Reavis contends that Sections 707(b) and 521(i) do not apply because his debts are not "primarily consumer debts."

**Conclusions of Law**

The Quapaw Tribe requests that the Court dismiss Reavis's case pursuant to Section 707(b) of the Bankruptcy Code.[4] Section 707(b) provides in part:

> After notice and a hearing, the court, on its own motion or on a motion by . . . any party in interest, may dismiss a case filed by an individual debtor under this chapter <u>whose debts are primarily consumer debts</u>, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter.

11 U.S.C. § 707(b)(1)(emphasis added). Pursuant to Section 707(b), a court may dismiss a case filed by an individual Chapter 7 debtor if it finds that the granting of relief would be an

---

[4] During the hearing, the Quapaw Tribe stipulated that it is not seeking dismissal under 11 U.S.C. § 707(a) or (b)(3).

8

abuse of the provisions of chapter 7. Id. However, Section 707(b) applies *only* in cases where the debts are primarily consumer debts.[5]

In order to prevail on its Motion to Dismiss under Section 707(b), the Quapaw Tribe bears the burden of proof to establish that (1) Reavis's case involves primarily consumer debts and (2) relief under chapter 7 would be an abuse of the provisions of chapter 7. See In re Stewart, 175 F.3d 796, 805-06, n.7 (10th Cir. 1999); In re Miller, 335 B.R. 335, 339 (Bankr. E.D. Pa. 2005).[6] "In order to carry that burden, [the movant] initially [is] required to produce evidence at the hearing sufficient to show by a preponderance that the debts in this case are primarily consumer debts." In re Tiskiewic, No. 02-11754C07G, 2003 WL 77000, at *1 (Bankr. M.D.N.C. Jan. 6, 2003). The threshold issue before the Court is whether Reavis's debts are "primarily consumer debts."

"The starting point in any § 707(b) analysis centers on the conditions as they existed at the time the petition is filed." In re Oot, No. 06-31622, 2007 WL 1464488, at *7 (Bankr. N.D. Ohio March 19, 2007)(citation omitted). "Under bankruptcy law, substantive interests and rights are generally fixed upon the filing of the bankruptcy petition." In re Pier, 310 B.R.

---

[5] In addition, Bankruptcy Rule 1007(b)(4) requires that chapter 7 debtors with primarily consumer debt file Official Form 22A, and if the debtor's current monthly income exceeds the applicable median family, such debtors must provide the calculations in accordance with Section 707(b). Bankruptcy Rule 1007(c) requires that such debtors file Official Form 22A "with the petition, or within 15 days thereafter[.]" Fed. R. Bankr. P. 1007(c).

[6] See also Price v. United States Trustee (In re Price), 280 B.R. 499, 501 (B.A.P. 9th Cir. 2002); In re Hall, 258 B.R. 45, 51 (Bankr. M.D. Fla. 2001); In re Tiskiewic, No. 02-11754C07G, 2003 WL 77000 (Bankr. M.D.N.C. Jan. 6, 2003), *citing* In re Cohen, 246, B.R. 658, 665 (Bankr. D. Colo. 2000)(other citations omitted).

9

347, 354 (Bankr. N.D. Ohio 2004)(citation omitted); see also In re Ellringer, No. 06-42263, 2007 WL 1976750, at *4 (Bankr. D. Minn. June 20, 2007)("The means test provides a snapshot of debtors' finances. The means test is not meant to be continually updated as debtors' circumstances change.").

The Code defines "consumer debt" as "debt incurred by an individual primarily for personal, family, or household purpose." 11 U.S.C. § 101(8).[7] "Debt" means "liability on a claim," 11 U.S.C. § 101(12), and "claim," in turn, is broadly defined as any "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]" 11 U.S.C. § 101(5)(A). "Under the Code, the fact that the tort claim may be unliquidated or disputed does not mean that it is not a claim." 2 LAWRENCE P. KING, COLLIER ON BANKRUPTCY ¶ 101.05[6], at 101-52 (15th ed. rev. 2001). Thus, contingent, unliquidated and disputed debts are considered when determining whether a debtor's debts are primarily consumer debts.

The United States Court of Appeals for the Tenth Circuit has defined "'primarily' in the context of § 707(b) as meaning consumer debt exceeding fifty percent of the total debt." In re Stewart, 175 F. 3d 796, 808 (10th Cir. 1999). In other words, the phrase "primarily

---

[7] Debts incurred for a business venture or with a profit motive do not fall into the category of a consumer debt. See Citizens Nat'l Bank v. Burns (In re Burns), 894 F.2d 361, 363 (10th Cir. 1990). Tort liability as a result of actionable negligence is not a consumer debt. See In re Izzi, 196 B.R. 727, 731 (Bankr. E.D. Pa. 1996)(citations omitted).

consumer debt" is construed as meaning that the dollar amount of consumer debt exceeds the dollar amount of nonconsumer debt.

Here, over 64% of Reavis's total debt listed in the schedules is debt arising out of Reavis's accounting practice. Reavis testified that based on all of the information available to him at the time of filing, he believed that the Quapaw Tribe's contingent, disputed and unliquidated claim against him totaled at least $225,000.

The Quapaw Tribe failed to present any evidence to establish that it had liquidated its claim at $50,000 prior to the time Reavis filed his bankruptcy petition other than Berrey's uncorroborated testimony. The Quapaw Tribe filed the $50,000 Proof of Claim more than a month after the petition date.[8] Berrey testified that the $50,000 amount was an "arbitrary" figure and that he decided to file the Motion to Dismiss in order to "preserve" the claim in the amount of $50,000 and that "it was a strategy and use of the rules to preserve [the] claim of $50,000." In the Motion to Dismiss, the Quapaw Tribe stated that "[i]f the Quapaw Tribe chooses to forego any possible claims over and above $50,000, there is no legal impediment that prevents it from doing so." Supplement to Motion to Dismiss at 4. The Quapaw Tribe's decision to forego amounts over and above $50,000 on January 4, 2007, when it filed the Proof of Claim, does not alter the fact that Reavis's debts, including disputed, contingent and unliquidated debts, were not "primarily consumer debts" on the petition date, nor does it

---

[8] The "sole purpose of a proof of claim is to allow the creditor to assert a right to participate in the distribution of any assets. In a no asset case, the right to file a proof of claim is initially 'meaningless and worthless.'" In re Candelaria, 121 B.R. 140, 143 (Bankr. E.D.N.Y. 1990)(citation omitted). Reavis's Chapter 7 bankruptcy case is a no asset case.

11

operate to retroactively subject Reavis to dismissal under Section 707(b). The Quapaw Tribe cannot circumvent the limitation of 707(b) that debts be primarily consumer debts by manipulating the amount of its claim post-petition solely for purposes of placing the debtor within the parameters of Section 707(b).

Reavis's testimony established that he prepared his schedules in good faith and made a bona fide effort to value the Quapaw Tribe's claim against him based upon the information which was available to him as of the petition date.[9] Reavis's testimony was credible, consistent with his bankruptcy petition signed under penalty of perjury, and was corroborated by Field's testimony. There is no evidence that Reavis misrepresented facts in his bankruptcy schedules or filed his petition in bad faith.

The Quapaw Tribe failed to meet its burden to establish that Reavis's debts were primarily consumer debts as of the petition date for purposes of applying 11 U.S.C. § 707(b). Thus, the Court finds that Reavis's debts are not primarily consumer debts and Section 707(b) does not apply. The Court further finds that because Reavis's debts are not primarily consumer debts, Reavis was not required to file Official Form 22A in accordance with Bankruptcy Rule 1007(b)(4).

---

[9] The Court notes that in the complaint in the Reavis lawsuit, the Quapaw Tribe stated that it sought damages "in excess of $10,000." Debtor's Exh. 4 at 2. Reavis timely amended his schedules to reflect his understanding of his actual potential liability in the Reavis lawsuit.

**Conclusion**

Because the Quapaw Tribe failed to establish that the debts in this case are primarily consumer debts, the Court, without reaching the issue of abuse, must deny the motion. Accordingly, the Motion to Dismiss is denied.

**SO ORDERED** this 30th day of July, 2007.

DANA L. RASURE, CHIEF JUDGE
UNITED STATES BANKRUPTCY COURT